IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHANDA HARRIS, | ) | |
| | ) | Civil Action No. 19-cv-74 |
| Plaintiff, | ) | |
| | ) | Judge Marilyn J. Horan |
| v. | ) | |
| | ) | |
| CITY OF PITTSBURGH; CITY OF | ) | |
| PITTSBURGH POLICE DEPARTMENT; | ) | |
| GEORGE SATLER, and WILLIAM | ) | |
| MUDRON, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

On January 23, 2019, Plaintiff Shanda Harris filed a Complaint against Defendants, the City of Pittsburgh, the City of Pittsburgh Police Department, and Detectives George Satler and William Mudron. (ECF Nos. 1, 3). On March 29, 2019, Defendants moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6). (ECF No. 4). The parties briefed the issues, (ECF Nos. 6, 8, 9), and the Court heard oral argument on the Motion to Dismiss on July 18, 2019.

Based on the following, the Motion to Dismiss will be granted.

**I. Background**

On or about December 29, 2017, a non-fatal shooting occurred in the City of Pittsburgh near 2407 Wylie Avenue, the address of a building owned by Plaintiff Shanda Harris. (ECF No. 3, at ¶¶ 13, 17). According to the affidavit attached to the search warrant application,[1] upon

---

[1] Because Detective Mudron's affidavit of probable cause is "integral to or explicitly relied upon" by the Complaint, *see Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018), the Court may properly consider the affidavit of probable cause without converting the Motion to Dismiss to a Motion for Summary Judgment.

1

arriving at the scene of the shooting, Pittsburgh Police Officer Bigley spoke with the victim, Geraldine Williams, before she was transported to a local hospital. (ECF No. 4-1, at 2). Ms. Williams told Officer Bigley that she and her boyfriend, Phillip Harrison, were walking down Upfold Way, toward Mr. Harrison's apartment building at 2407 Wylie Avenue, when she heard two bangs, after which she and Mr. Harrison continued toward the rear door of Harrison's apartment. *Id*. After speaking with Ms. Williams, Officer Bigley noticed four small puddles of blood leading from the intersection of Chauncey Street and Upfold Way toward the rear door of 2407 Wylie Avenue, and an additional drop of blood directly in front of the rear door of 2407 Wylie Avenue. *Id.*

At approximately 4:00 p.m. on December 29, 2017, Detectives Brandon Nee and William Mudron arrived at the scene and observed a camera on the rear wall of 2407 Wylie Avenue, along with black cable lines running into a retail space on the first floor of the building. *Id.* Detectives Nee and Mudron observed similar cameras at the front of 2407 and 2409 Wylie Avenue. *Id*. The detectives concluded that all of the cameras ran directly into Ms. Harris's business. *Id*. Detective Mudron attested in the affidavit of probable cause that he believed surveillance footage of the events leading up to the shooting could help his investigation of the shooting. *Id.* Consequently, on December 30, 2017, he requested a search warrant for "video surveillance to include, but not limited to, the interior and exterior of the property listed at 2407 and 2409 Wylie Avenue, Pittsburgh PA 15219," as well as "[a]ny computer devices, hard drives or taping devices used to capture video surveillance between 12/28/2017 and 12/29/2017." *Id.* at 3. The magistrate issued the search warrant at 3:47 pm on December 30, 2017, and required that the warrant "be served as soon as practicable" and "in no event later than . . . 3:47 pm" on January 1, 2018. *Id.* at 1.

2

Later that same day, on December 30, 2017, Detective Mudron went to Ms. Harris's building to execute the search warrant and knocked on the door to announce his presence. (ECF No. 3, at ¶ 23). After no one answered the door, Detective Mudron called Ms. Harris to inform her of the search warrant. *Id.* at ¶ 24. Ms. Harris told Detective Mudron that she was out of town but would allow him to enter the premises when she returned two days later, on Monday, January 1, 2018. *Id.* at ¶ 25. Detective Mudron asked Ms. Harris whether someone else could allow him to enter the premises. *Id.* at ¶ 26. Ms. Harris said no and explained that she was the only person with a key. *Id.* Detective Mudron then told Ms. Harris that if she was not able to allow him to enter the premises, he would break the door down and enter the building. *Id.* at ¶ 27.

Upon returning home, Ms. Harris observed that the back door of her business was open and damaged, and that doors leading to the kitchen and office were broken and damaged. *Id.* at ¶¶ 29–30. Additionally, Ms. Harris's video surveillance system was missing from the desk in her office and a copy of the search warrant and inventory receipt were left behind. *Id.* at ¶ 31. The receipt stated that the items taken included a black remote, black power cord, and the surveillance system. *Id.* at ¶ 32. Two and a half weeks later, police officers from the Police Department returned the video surveillance system, which Ms. Harris alleges was damaged beyond repair. *Id.* at ¶ 33.

Ms. Harris subsequently filed the present Complaint against Detectives Mudron and Satler, the City of Pittsburgh, and the City of Pittsburgh Police Department. *Id.* at ¶¶ 7–10. Specifically, Ms. Harris brings four claims under 42 U.S.C. § 1983, alleging various violations of the Fourth Amendment to the United States Constitution. In Counts I, II, and III, Ms. Harris alleges Unlawful Seizure of Property, Unlawful Search of Property, and Unreasonable Entry of

Property, respectively, against Detectives Mudron and Satler.[2] *Id.* at ¶¶ 37–54. In Count IV, Ms. Harris alleges that Defendants City of Pittsburgh and Pittsburgh Police Department violated her right to be protected from unreasonable search and seizure under the Fourth Amendment of the United States Constitution by way of *Monell* liability. *Id.* at ¶¶ 55–58. Additionally, Ms. Harris brings two state law negligence claims against the City of Pittsburgh and Pittsburgh Police Department. In Count V, Ms. Harris brings a claim of Negligent Damage to Personal Property, and in Count VI, Ms. Harris brings a claim of Negligent Damage to Real Property. *Id.* at ¶¶ 59–69. Defendants seek dismissal of the Complaint on various grounds in their Motion to Dismiss and supporting briefs, namely that Ms. Harris fails to state a claim and that Detectives Mudron and Satler are entitled to qualified immunity. (ECF Nos. 4, 6, 9).

**II. Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads fact[s] that allow[] the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A complaint pleading legal conclusions devoid of factual allegations will not survive a motion to dismiss. *Id.*

---

[2] Ms. Harris's Complaint names Detective Satler as a defendant and brings Counts I through III against him, but the factual allegations make no mention of him whatsoever. Even if the Court were to find that Ms. Harris stated a claim under § 1983, Detective Satler would still be dismissed from this case due to the complete lack of facts regarding his involvement in the complained-of conduct. In any event, because the Court finds that Ms. Harris has not stated a claim, this point does not need to be addressed further.

4

The Third Circuit has held the district courts should perform a two-part analysis when presented with Rule 12(b)(6) motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court should consider only factual allegations, not legal conclusions. *Id.* at 210–11. Second, accepting all factual allegations as true, the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief." *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). The court need not "accept unsupported conclusions and unwarranted inferences." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013).

Finally, "in evaluating a motion to dismiss, courts are not limited to the four corners of the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). This means that "the Court may also review matters of public record, exhibits attached to the complaint and items appearing in the record of the case, as well as indisputably authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Wilson v. Borough*, 2017 WL 467974, at *3 n.2 (W.D. Pa. Feb. 3, 2017).

**III. Discussion**

A. Section 1983 claims against Detectives Mudron and Satler

Ms. Harris alleges that Detectives Mudron and Satler violated her Fourth Amendment rights through an unlawful search of her property (Count II), an unreasonable entry of her real property (Count III), and an unlawful seizure of her personal property (Count I). (ECF No. 3, at ¶¶ 37–54). Plaintiff Ms. Harris bases these claims primarily on her contention that the search warrant issued by the magistrate was invalid because it was not based on probable cause. *Id.* at ¶¶ 2, 40, 47. Detectives Mudron and Satler argue that the warrant was valid and that their entry

into Ms. Harris's building was reasonable. (ECF No. 6, at 5–7). Accordingly, they seek dismissal of the Counts I through III as a matter of law. *Id.* at 5–6.

### i. Validity of the search warrant

The first issue to address is whether the search warrant executed by the Detectives was valid. It is well-settled that "[t]he threshold requirement for issuance of a warrant is probable cause." *United States v. Ritter*, 416 F.3d 256, 262 (3d. Cir. 2005). A magistrate's task in determining whether probable cause exists "is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Of note, courts have consistently held that "search warrants are directed, not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found." *United States v. Whitner*, 219 F.3d 289, 297 (3d. Cir. 2000) (internal quotation omitted). Additionally, "a search warrant must state with sufficient particularity the property to be seized." *United States v. Henderson*, 416 F.3d 686, 695 (3d. Cir. 2005). However, "[t]he degree of specificity depends on the circumstances and the types of items" described in a search warrant. *Id.* When reviewing a magistrate's finding that a search warrant is supported by probable cause, a court must determine whether a "'substantial basis' exists for the magistrate judge's decision." *Whitner*, 219 F.3d at 296. And, a reviewing court should pay "great deference" to a magistrate's determination of probable cause. *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410 (1969)).

Applying these principles to the present case, it is clear that the magistrate had a substantial basis for determining that a search of Ms. Harris's building at 2407 Wylie Avenue would turn up evidence pertinent to the shooting on December 29, 2017. According to the

6

affidavit of probable cause, the first officer on the scene, Officer Bigley, spoke with the victim and learned that she was shot near 2407 Wylie Avenue. (ECF No. 4-1, at 2). Additionally, Officer Bigley noticed puddles of blood leading to the rear door of 2407 Wylie Avenue and a small drop of blood directly in front of the rear door of 2407 Wylie Avenue. *Id.* When they arrived at the scene, Detectives Mudron and Nee saw a camera on the rear wall of 2407 Wylie Avenue and black cable lines running into a retail space on the first floor of the building. *Id.* Detectives Mudron and Nee also saw similar cameras posted at the front of 2407 and 2409 Wylie Avenue. *Id.* The Detectives concluded that all of the cameras ran directly into Ms. Harris's business on the first floor of the building. *Id.* Detective Mudron attested in the affidavit that he believed surveillance footage of the events leading up to the shooting could help his investigation into the shooting. *Id.*

Ms. Harris contends, however, in her Complaint and in her response to the Motion to Dismiss, that the search warrant lacked probable cause because it contained no facts connecting her or her business to the commission of a crime. (ECF No. 3, at ¶¶ 44–46; ECF No. 8, at 4). But Ms. Harris misunderstands the state of the law: it is immaterial to the probable cause determination that Ms. Harris was not a suspect in the shooting, or that her property was not alleged to be involved in the commission of a crime, because, as noted above, "search warrants are directed, not at persons, but at property where there is probable cause to believe that . . . evidence of crime will be found." *Whitner*, 219 F.3d at 297. Considering the facts presented in the affidavit of probable cause (and reiterated in Ms. Harris's Complaint), the magistrate did not err in deciding that there was "a fair probability that . . . evidence" of the shooting would be found by obtaining the footage on Ms. Harris's surveillance equipment. *Gates*, 462 U.S. at 238. Consequently, the search warrant issued by the magistrate was based on probable cause and was

therefore valid. Accordingly, the search of Ms. Harris's property was lawful and not violative of the Fourth Amendment. Count II, therefore, must be dismissed.

*ii. Reasonableness of Detectives' entry*

The next issue is whether the Detectives' forcible entry into Ms. Harris's property was reasonable. The Supreme Court has held that the Fourth Amendment "recognize[s] a law enforcement officer's authority to break open the doors of a dwelling" so long as the officer first announced his "presence and authority." *Wilson v. Arkansas*, 514 U.S. 927, 929 (1995). The Court in *Wilson* went on to hold that an officer's execution of a search warrant should be determined under a reasonableness standard, and that an officer's adherence to the knock and announce principle is one factor that a reviewing court must consider. *Id.* at 934. Moreover, the Supreme Court has held that "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979).

On December 30, 2017, Detective Mudron went to Ms. Harris's business to execute a valid search warrant that was issued that same day. The search warrant was to be "served as soon as practicable" and "in no event later than . . . 3:47 pm" on January 1, 2018. (ECF No. 4-1, at 1). Upon arriving at her business on December 30, 2017, Detective Mudron knocked on the door and no one answered. *Id.* at ¶ 24. Detective Mudron then called Ms. Harris to inform her of the search warrant. *Id.* It was only after Ms. Harris told Detective Mudron that he would not be able to enter her business premises until she returned from out of town two days later on January 1, 2018, that he determined it was necessary to forcibly enter her business premises in order to execute the warrant. *Id.* at ¶¶ 26–30. In light of the deadline to serve the warrant set by the magistrate in the Application for Search Warrant and Authorization, the fact that Detective Mudron both announced his presence to Ms. Harris and attempted to execute the search without

8

force, and Supreme Court precedent regarding the execution of search warrants, it is clear that Detective Mudron was reasonable in forcibly entering Ms. Harris's business to execute the search warrant. Therefore, Count III of the Complaint must be dismissed.

### iii. Lawfulness of seizure

The last issue under the Fourth Amendment claims against the Detectives is whether the Detectives unlawfully seized Ms. Harris's video surveillance equipment. Ms. Harris alleges that the Detectives' seizure of her property was "with an invalid warrant, and without a valid legal basis." (ECF No. 3, at ¶ 40). As discussed above, the warrant at issue in this case was based on probable cause, and, therefore, was valid. Furthermore, the search warrant stated that the Detectives wanted to search Ms. Harris's business for "video surveillance [equipment] to include, but not limited to, the interior and exterior of the property listed at 2407 and 2409 Wylie Avenue, Pittsburgh PA 15219. Any computer devices, hard drives or taping devices used to capture video surveillance between 12/28/2017 and 12/29/2017." (ECF No. 4-1, at 2). Upon entering Ms. Harris's business, the Detectives seized Ms. Harris's video surveillance system and left a copy of the search warrant and inventory receipt. (ECF No. 3, at ¶ 31). The receipt stated that the items taken included a black remote, black power cord, and the surveillance system—in other words, exactly what the valid search warrant designated to be seized. *Id.* at ¶ 32. Ms. Harris's property was seized in accordance with a valid warrant. The seizure, therefore, was lawful, and Count I must be dismissed.

In summary, Counts I through III must be dismissed because Ms. Harris has failed to plead facts sufficient to support claims for violations of her Fourth Amendment Rights. Additionally, because Detectives Mudron and Satler did not violate Ms. Harris's constitutional rights, the Court does not reach the issue of qualified immunity.

B. *Monell* claim

Next, Ms. Harris alleges in Count IV that the City of Pittsburgh and the Police Department violated the Fourth Amendment because they "have encouraged, tolerated, ratified and been deliberately indifferent to . . . patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline" related to applying for and executing search warrants. (ECF No. 3, at ¶ 58). However, "[a] municipality may be liable under section 1983 only if it can be shown that its employees violated a plaintiff's civil rights as a result of a municipal policy or practice." *Williams v. West Chester*, 891 F.2d 458, 467 (3d Cir. 1989). Accordingly, because Ms. Harris failed to plead facts showing that the Detectives violated her constitutional rights, the *Monell* claim cannot stand. Therefore, Count IV must be dismissed.

C. State law claims

Lastly, because the Court has dismissed all federal claims in this matter, the Court declines to exercise supplemental jurisdiction over Ms. Harris's state law claims, in accordance with 28 U.S.C. § 1367(c)(3). Therefore, Counts V and VI are also dismissed.

**IV. Conclusion**

Based on the foregoing, Defendants' Motion to Dismiss is GRANTED, and the Complaint is hereby DISMISSED.

IT IS SO ORDERED.

DATE September 10, 2019

Marilyn J. Horan
United States District Judge